# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EDDIE L. HATCH, JR. and MICHELLE DAVIS-HATCH,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF MILWAUKEE, TOM BARRETT, ASHANTI HAMILTON, JAMES STARKS, SAKURI FEARS, ANDREA PRATT, DEPARTMENT OF CITY DEVELOPMENT, DWAYNE K. EDWARDS, MATT HAESSLY, AMY E. TURIM, KEN LITTLE, MARTHA BROWN, and VANESSA KOSTER,<br><br>Defendants. | Case No. 20-CV-1791-JPS<br><br>**ORDER** |

On December 4, 2020, Plaintiffs filed a pro se complaint alleging violations of the Fair Housing Act (the "FHA"), 42 U.S.C. § 3601, *et seq.*, by Defendants. (Docket #1). On June 16, 2021, the Court dismissed many of the original defendants from this case upon their motions alleging that Plaintiffs failed to state a claim under the FHA. On July 2, 2021, Plaintiffs filed a "motion to rescind order." (Docket #56). The Court will deny this motion. On August 9, 2021, Defendants Tom Barrett, City of Milwaukee, Department of City Development, Dwayne K. Edwards, Sakuri Fears, Matt Haessly, Ashanti Hamilton, Vanessa Koster, Ken Little, Andrea Pratt, James Starks, and Amy E. Turim ("Moving Defendants") filed an amended motion to dismiss. (Docket #62). This motion is fully briefed, and, for the reasons explained below, the Court will grant it.

1. **LEGAL STANDARD**

    1.1. **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Federal Rule of Civil Procedure Rule 12(c) permits a party to move for judgment after the complaint and answer have been filed by the parties. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).[1] A

---

[1] Moving Defendants filed an answer to the complaint on February 19, 2021. (Docket #21). Thus, their present motion is more properly characterized as a motion for judgment on the pleadings.

motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014).

Because Plaintiffs are proceeding pro se, their filings are entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, even pro se litigants must comply with procedural rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). The Court is not "charged with seeking out legal issues lurking within the confines of the *pro se* litigant's pleadings," nor is it required to "decide the *unraised* issues." *Kiebala v. Boris*, 928 F.3d 680, 685 (7th Cir. 2019) (internal quotations and citations omitted).

### 1.2 Motion for Reconsideration

Two rules allow a court to revisit a final judgment in civil cases. First, Rule 59(e) empowers a court to alter or amend a judgment on motion by a party. Fed. R. Civ. P. 59(e). The party seeking relief under this Rule must establish "a manifest error of law or present newly discovered evidence." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). Whether to grant a motion to amend a judgment "is entrusted to the sound judgment of the district court," *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996), but the movant must first "clearly establish" his right to relief, *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 n.3 (7th Cir. 2001).

"Appeal, not reconsideration, is the time to deal with the majority of legal errors," and so only "manifest errors . . . so obvious that no additional explanation is needed or possible" are proper subjects of a Rule 59 motion. *Burney v. Thorn Ams., Inc.*, 970 F. Supp. 668, 671 (E.D. Wis. 1997).

Such error "is not demonstrated by the disappointment of the losing party" but instead "the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

Similarly, Rule 60(b) allows the Court to vacate a judgment based on, *inter alia*, excusable neglect, newly discovered evidence, fraud by a party, satisfaction of the judgment, or "any other reason that justifies relief." Fed. R. Civ. P. 60(b). Relief under Rule 60(b) is an "extraordinary remedy and is granted only in exceptional circumstances." *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010). The Court's determination is constrained only by its sound discretion. *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014).

## 2. RELEVANT ALLEGATIONS

Plaintiffs allege that they spent over two years working with the Milwaukee Department of City Development (the "DCD") to purchase a "City owned commercial building" in Milwaukee, Wisconsin (the "Property"). (Docket #1 at 5). Plaintiffs desired the Property for their business for the purpose of "creating a training facility . . . for entrepreneurs in the food service industry." (*Id.*) In October of 2018, Plaintiffs spoke with a representative from the DCD, Dwayne K. Edwards, during an inspection of the Property. (*Id.*) At this meeting, Plaintiffs came to believe that the DCD and the City of Milwaukee would sell them the Property. (*Id.*) This sale, however, never occurred. (*Id.*)

Plaintiffs allege that the DCD "entertained offers from several black entrepreneurs," but that it gave "unfair support and privilege" to a "white, unfunded developer." (*Id.*) Plaintiffs contend these actions violated the

FHA. (*Id.*) Specifically, Plaintiffs write that "[t]here was a concerted effort by all to deny us the enjoyment and right to purchase [the Property]." (*Id.*)

Plaintiffs ask this Court to award them, among other things, acquisition of the Property for $1.00, "[w]orking capital to hire and train staff comparable to our competitors," "the support of all current and future city agencies and associates in the support of local entrepreneurs," "a public acknowledgment of the harm done with apology from [the City of Milwaukee] Common Council," a preliminary injunction on the sale of the Property, and punitive damages. (*Id.* at 4).

3. **ANALYSIS**

    3.1 **Motion to Dismiss**

    3.1.1 **Plaintiffs' FHA Claims**

Plaintiffs bring their case pursuant to the FHA. Moving Defendants ask that this action be dismissed against them for failure to state a cognizable claim under the FHA. Specifically, Moving Defendants argue that, because the Property does not constitute a "dwelling," it is not covered by the FHA.

The FHA makes it unlawful "[t]o refuse to sell . . . or otherwise make unavailable or deny, a *dwelling* to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a) (emphasis added). It defines a "dwelling" as

> any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof.

*Id.* at § 3602(b).

In their complaint, Plaintiffs describe the Property as a "commercial building." (Docket #1 at 5). They continually assert that they intend to use the Property for commercial purposes (e.g., a training facility for the food-service industry). (*Id.*) In their subsequent filings, Plaintiffs explain that the Property could be used as a COVID-19 "vaccine location." (Docket #48 at 1). Plaintiffs make statements that they "never assert residential real estate in [their] complaint," (*id.* at 1) (emphasis removed), and that "[t]heir primary goal was to provide training for under employed persons in our community to work directly with the family business," (Docket #56 at 6). These are commercial—not residential—uses.

Plaintiffs state that their "home based business was to reside, occupy, and dwell in the Property as a place of business as enjoyed by others," (Docket #56 at 3), and that they "have from the beginning, made it clear that it was a commercial dwelling," (Docket #64 at 2). If Plaintiffs are attempting to argue that their business is to "reside" in the Property, thus making the Property a "dwelling" for their business, such line of reasoning is inconsistent with the FHA's definition of a dwelling as "any building . . . designed or intended for occupancy as, a residence by one or more *families*." 42 U.S.C. § 3602(b) (emphasis added). Under the FHA, "'[p]erson' includes one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, receivers, and fiduciaries," *id.* § 3602(d), whereas "'[f]amily' includes a single individual," *id.* § 3602(c). The statute differentiates between "person" and "individual." While both individuals and certain business entities are "persons," the definition of "dwelling" does not

depend on the Property being used by a "person" but rather an "individual" (who may constitute a family).

The case law to which Plaintiffs cite does not support their case. Citing *Garcia v. Condarco*, 114 F. Supp. 2d 1158 (D.N.M. 2000), Plaintiffs note that some courts look to the purpose of the FHA and the purpose of the property in question in deciding the statutory meaning of "dwelling." (Docket #64 at 2). In *Garcia*, a detainee alleged that she was sexually assaulted in a New Mexico jail. *Garcia*, 114 F. Supp. 2d at 1158–59. She brought several claims, including one under the FHA. *Id.* at 1159. In granting the defendants' motion to dismiss the FHA claim, the court considered whether a jail is considered a dwelling "within the context and the purpose of the FHA." *Id.* The court observed that, generally, "the courts have given the FHA a generous construction in order to effectuate its broad and inclusive language." *Id.* (internal quotation and citation omitted). "This generous construction is apparent in the range of structures that courts have found to be 'dwellings' within the meaning of the FHA." *Id.* at 1159–60. As collected by the *Garcia* court, these structures include "trailers for migrant workers, unit in timeshare resort, nursing home for handicapped elderly people, residential facility for homeless families, residential school for emotionally disturbed adolescents, summer bungalows run by a country club, an AIDS hospice, cooperative apartment complexes, and a children's home." *Id.* at 1160 (internal footnotes and citations omitted). However, the court noted,

> [t]he cases finding specific structures "dwellings" within the meaning of the FHA are, however, linked by a more applicable common, albeit sometimes implicit, feature—they are primarily "***designed or intended for occupancy, as a residence***." Therefore, the features in common between the

> [jail] and structures found to be "dwellings" within the meaning of the FHA should not obscure the glaring difference between them: The [jail] is designed as a detention facility not a "residence." It is this difference that proves critical within the overall purpose of the FHA.

*Id.* (quoting 42 U.S.C. § 3602(b)) (emphasis added).

As discussed above, Plaintiffs do not (nor could they) allege that the Property is primarily designed or intended for occupancy as a residence. A training center and business incubator for the food-service industry is not akin to the uses highlighted in *Garcia*. Nor does the intended use serve the policy of the FHA: "to provide 'for fair housing throughout the United States.'" *Id.* at 1161 (quoting 42 U.S.C. § 3601).

Plaintiffs also rely on *Intermountain Fair Housing Council v. Boise Rescue Mission Ministries*, 717 F. Supp. 2d 1101, 1104 (D. Idaho 2010), *aff'd on other grounds*, 657 F.3d 988 (9th Cir. 2011). (Docket #64 at 2). *Intermountain* addressed claims by an advocacy organization against a non-profit operator of a homeless shelter, alleging religion- and sex-based discrimination in violation of the FHA. *Id.* at 1103–06. In reaffirming its grant of summary judgment to the defendants, the court concluded that the homeless shelter component of the facility was not a "dwelling" subject to the requirements of the FHA. *Id.* at 1109–12. The court noted that "[a]lthough the term 'residence' is central to the definition of a 'dwelling,' the FHA does not define 'residence.'" *Id.* at 1109. The court then referred to the "ordinary meaning" of residence: "a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit." *Id.* (quoting *United States v. Hughes Mem'l Home*, 396 F. Supp. 544, 549 (W.D. Va. 1975) (quoting Webster's Third New Int'l Dictionary)). The court discussed two factors

(mentioned without analysis by Plaintiffs in their response brief): "(1) whether the facility is intended or designed for occupants who intend to remain in the [facility] for any significant period of time; and (2) whether those occupants would view [the facility] as a place to return to during that period." *Id.* (internal quotations and citations omitted). The court held that the shelter did not meet either factor. *Id.* at 1111–12.

In short, applying the analyses of the cases cited by Plaintiffs does nothing to improve their FHA claim. Their alleged intended uses for the Property are less like a "dwelling" than the uses considered or collected in *Garcia* and *Intermountain*.

### 3.1.2 Plaintiffs' Defamation Claims

In their complaint, Plaintiffs offer one sentence that may be construed as a defamation claim: "[w]e were also suffered defamatory harm to selection committee about our preparedness and in a public newsletter." (Docket #1 at 5). Moving Defendants seek to dismiss this claim for lack of subject-matter jurisdiction.

Defamation claims are governed by state law. *See Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007). A federal court is not required to exercise supplemental jurisdiction over state-law claims where it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Id.* Thus, given that the Court has dismissed Plaintiffs' federal law claims arising under the FHA, *see supra* Section 3.1.1, the Court will also decline to exercise supplemental jurisdiction over Plaintiffs' state-law defamation claim.

### 3.2 Motion to Rescind Order

Plaintiffs' "motion to rescind order" arises out of the Court's earlier order dismissing multiple Defendants for Plaintiff's failure to state a claim under the FHA. (Docket #55, #56). Specifically, the Court held that Plaintiffs could not bring a claim under the FHA because the Property is not a "dwelling" as defined under the FHA. (Docket #55). In deciding Moving Defendants' present motion to dismiss, the Court sufficiently reassessed its FHA analysis on the same issue. *See supra* Section 3.1.1. Plaintiffs have not carried their burden under either Rule 59(e) or 60(b). The Court finds no indication of manifest error, newly discovered evidence, excusable neglect, fraud by a party, satisfaction of a judgment, or any other reason that justifies relief. Fed. R. Civ. P. 59(e), 60(b). The Property is not a dwelling for purposes of the FHA. The Court will deny Plaintiffs' motion to rescind order.

### 3.3 Defendant Martha Brown

On March 1, 2021, the Court received an affidavit of non-service as to Defendant Martha Brown ("Brown"). (Docket #25 at 2). According to the affidavit, before her retirement, Brown was a "deputy commissioner" with the City of Milwaukee. (*Id.*) Based on the docket, Plaintiffs never reattempted service on Brown, and Brown has not appeared in the case.

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action

without prejudice against that defendant or order that service be made within a specified time." Thus, typically, where a party is not yet served, the Court must provide notice to the plaintiff before dismissing the unserved party.

However, even where a plaintiff pays the filing fee and is not proceeding *in forma pauperis*, a district court may conduct limited screening and dismiss a complaint, sua sponte, if it appears the allegations are "frivolous." *Weinschenk v. Cent. Intel. Agency*, 818 F. App'x 557, 558 (7th Cir. 2020) ("But when the plaintiff is not proceeding in forma pauperis, *only* frivolousness can justify the sua sponte dismissal without giving [the plaintiffs] notice and the opportunity to respond.") (citing *Aljabri v. Holder*, 745 F.3d 816, 819 (7th Cir. 2014); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003)). "A complaint is factually frivolous if the allegations are clearly baseless, irrational, fanciful, delusional, or wholly incredible." *Id.* Here, the Court need not allow Plaintiffs an opportunity to serve Brown just so that the Court can engage in another round of motion-to-dismiss practice. Plaintiffs' claims against Brown are deficient for the same reason as those against the other defendants: the Property is not a dwelling for purposes of the FHA. The Court will dismiss Plaintiffs' claims against Brown.

4.      **CONCLUSION**

The Court will grant Moving Defendants' motion to dismiss, (Docket #62). For the same reasons, the Court will dismiss the claims against the remaining, unserved defendant, Brown. The Court will not give Plaintiffs leave to amend. Plaintiffs themselves have admitted that the Property is a commercial, non-dwelling; there is no amendment that Plaintiffs could make that would state a claim under the FHA. *See Brown v. Scott*, No. 19-CV-1762-BHL, 2021 WL 857303, at *2 (E.D. Wis. Mar. 8, 2021) (citing *Foman*

*v. Davis*, 371 U.S. 178, 182 (1962)) ("the Supreme Court has explained that leave to amend need not be given when a plaintiff repeatedly fails to cure deficiencies or when allowing an amendment would unduly delay resolution of the case."). The Court will deny Moving Defendants' first motion to dismiss as moot. (Docket #59). The Court will deny Plaintiffs' motion to rescind order. (Docket #56). The case shall be dismissed in its entirety.

Accordingly,

**IT IS ORDERED** that Defendants Tom Barrett, City of Milwaukee, Department of City Development, Dwayne K. Edwards, Sakuri Fears, Matt Haessly, Ashanti Hamilton, Vanessa Koster, Ken Little, Andrea Pratt, James Starks, and Amy E. Turim's amended motion to dismiss (Docket #62) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the federal law claims against Defendants Tom Barrett, City of Milwaukee, Department of City Development, Dwayne K. Edwards, Sakuri Fears, Matt Haessly, Ashanti Hamilton, Vanessa Koster, Ken Little, Andrea Pratt, James Starks, Amy E. Turim, and Martha Brown be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that the Court, pursuant to 28 U.S.C. § 1367(c), declines to exercise supplemental jurisdiction over Plaintiffs' state law defamation claim, which be and the same is hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED** in its entirety;

**IT IS FURTHER ORDERED** that Defendants Tom Barrett, City of Milwaukee, Department of City Development, Dwayne K. Edwards, Sakuri

Fears, Matt Haessly, Ashanti Hamilton, Vanessa Koster, Ken Little, Andrea Pratt, and Amy E. Turim's first motion to dismiss (Docket #59) be and the same is hereby **DENIED as moot**; and

    **IT IS FURTHER ORDERED** that Plaintiffs' motion to rescind order (Docket #56) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 13th day of September, 2021.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge