# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

EDDIE L. HATCH, JR. and
MICHELLE DAVIS-HATCH,

                Plaintiffs,

v.

CITY OF MILWAUKEE, TOM
BARRETT, JEFF HANEWALL,
ANGELIQUE L. SHARPE,
STEPHANIE HARLING, ASHANTI
HAMILTON, JAMES STARKE,
SAKURI FEARS, ANDREA PRATT,
CINNAIRE SOLUTIONS,
CHRISTOPHER LAURENT, JAMES
DOW, WILLIE SMITH, HOWARD
SNYDER, DEPARTMENT OF CITY
DEVELOPMENT, DWAYNE K.
EDWARDS, MATT HAESSLY, AMY
E. TURIM, KEN LITTLE, MARTHA
BROWN, VANESSA KOSTER,
NWSCDC, *also known as* NORTH
WEST SIDE COMMUNITY
DEVELOPMENT CORPORATION,
and HAVENWOODS HEDC/BID #31.

                Defendants.

Case No. 20-CV-1791-JPS

# ORDER

## 1.    BACKGROUND & POSTURE

    This case is before the Court following remand from the Seventh Circuit Court of Appeals. ECF No. 77. The Seventh Circuit concluded that the Court "should have given the Hatches an opportunity to amend their complaint" before dismissing the action with prejudice for failure to state a

claim. *Id.* at 2 (discussing the Court's orders at ECF Nos. 55, 69). The Court had dismissed Plaintiffs' action with prejudice after concluding that Plaintiffs' allegations did not state claims under the Fair Housing Act. *See* ECF Nos. 55, 69, 77. Plaintiffs had not expressly attempted to raise claims under 42 U.S.C. § 1982, and the Court did not evaluate Plaintiffs' claims thereunder.

The Seventh Circuit agreed that "the district court rightly dismissed [Plaintiffs'] Fair Housing Act claim." ECF No. 77 at 5. Further, the Seventh Circuit stated that "the district court was right to dismiss the Hatches' complaint for failure to state a claim . . . under § 1982" because Plaintiffs had not alleged "intentional, race-based discrimination." *Id.* at 6. "Crucially," the Seventh Circuit wrote, "the complaint does not . . . suggest, for instance, that the defendants refused to sell the building, or interfered in its sale, *because of* the Hatches' race." *Id.* (internal citation omitted). Nevertheless, the Seventh Circuit concluded that "that defect is not so obviously incurable that the court should have dismissed the Hatches' pro se complaint with prejudice." *Id.* "[A] court should give at least one opportunity to identify a viable legal basis even though the plaintiff's identified legal theory was flawed." *Id.*

In accordance with the Seventh Circuit's order, the Court granted Plaintiffs leave to amend their complaint. ECF No. 79. Plaintiffs' first attempt at amending their complaint was unsuccessful for failure to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* Plaintiffs thereafter successfully filed their second amended complaint. ECF No. 80. That filing serves as the operative complaint in this action.

## 2.     FACTUAL ALLEGATIONS

Plaintiffs' suit relates to their unsuccessful attempt at purchasing property in Milwaukee, Wisconsin. The following facts are drawn from Plaintiffs' second amended complaint, ECF No. 80, and their response in opposition to Defendants' motion, ECF No. 100. *See infra* Section 4.1. In addition to providing supplemental factual allegations in their second amended complaint, Plaintiffs direct the Court back to the exhibits and statements included in the "first amended complaint." ECF No. 80 at 13.[1]

According to Plaintiffs, the property at issue went up for sale to the public at a price of $50,000. ECF No. 100 at 21. Plaintiff Eddie Hatch attests to having submitted a proposal to purchase the property for $40,000 with "pre-qualified funding." *Id*. Plaintiffs allege that Defendants, referred to as the "team," "worked behind the scenes to unlawfully position Cinnaire Solutions (a white man)" to acquire the property, a library, despite the fact that Cinnaire Solutions ("Cinnaire") allegedly had no financing in place. ECF No. 80 at 3. Plaintiffs describe Cinnaire as being "owned and operated by a white man." ECF No. 100 at 7. In contrast to Cinnaire, Plaintiffs allege that they submitted a proposal to purchase the property "with funds in hand and ready to close." *Id*. at 5. Meanwhile, Cinnaire "was allowed to present a proposal without qualification" because of "[s]ystemic, economic, [and] racial discrimination." *Id*. In October of 2018, Plaintiffs write, Defendant Department of City Development ("DCD") and NWSCDC[2] staff decided on Cinnaire as their "selected developer." *Id*. at 21.

---

[1] *See infra* Section 4.1.

[2] This acronym stands for Northwest Side Community Development Corporation. *See* https://www.nwscdc.org/ (last visited Nov. 21, 2022).

Case 2:20-cv-01791-JPS   Filed 11/23/22   Page 3 of 33   Document 111

Plaintiffs allege that, "[f]rom the day the Hatch Family's proposal was submitted in Oct. 2018," Defendants discriminated against every proposal submitted despite Plaintiffs having "firm financing in place." *Id*. at 3. "[A]ll the named Defendants supported Cinnaire Solutions['] acquisition of the subject property via 'site-control,' to receive Federal Government subsidies, to close the (deal) purchase." *Id*. at 7. Plaintiffs write that Defendants developed and accomplished schemes, "set in motion before the property was listed for sale publicly," to "interfere with [Plaintiffs'] prequalified offer to purchase real property . . . ." ECF No. 80 at 3, 6. According to Plaintiffs, Defendants intended to "hold on to the subject property . . . rather than sell it to the black family . . . ." *Id*. at 6.

One such scheme concocted and implemented by Defendants was an "asbestos excuse"—"intentionally and maliciously used to deny the Plaintiffs [sic] right to purchase." *Id*. at 4. This asbestos scheme was "promulgated by Martha Brown to Mayor Tom Barrett and other political leaders . . . ." *Id*. Plaintiffs allege that Defendant Martha Brown ("Brown") was "given authority by Rocky Marcoux" to help the Hatch family "in their time of need" but that she failed to act. *Id*. Mayor Tom Barrett ("Barrett") was "put on notice of the issue" but his office did nothing more than "contact Martha Brown" and "did nothing more to investigate the issue with the Plaintiffs as requested." *Id*. According to Plaintiffs, DCD and Defendant Dwayne Edwards ("Edwards") asked a contractor to inflate an estimate for asbestos abatement "to exceed the two minority proposals remaining." *Id*. at 4–5. This had the alleged purpose and effect of placing "Cinnaire Solutions, the only one high enough to cover the inflated abatement estimate," in a competitive position. *Id*. at 5. Plaintiffs claim that "while the Defendants were working on the 'asbestos abatement' excuse,"

Case 2:20-cv-01791-JPS   Filed 11/23/22   Page 4 of 33   Document 111

by virtue of which Defendants allegedly could not sell the subject property to "anyone," Defendants were actually continuing to work on "only one of the three final proposals"—that of Cinnaire. ECF No. 100 at 5.

Plaintiffs allege that Defendants knew prior to the property being listed for sale publicly and "each day following" that Cinnaire "did not have firm financing in place as required by the plaintiffs and every other minority proposals [sic] submitted for consideration and rejected." ECF No. 80 at 6. Plaintiffs allege further that the "independent review committee" was "rigged" with several Defendants, including Defendant Jeff Hanewall ("Hanewall"), participating therein "to sway the outcome." *Id*. at 4. This committee was not truly "independent" and was provided "tainted" information on which to base its decision. *Id*. at 4, 6. According to Plaintiffs, Hanewall instructed Defendant(s) (which Defendant(s) is not clear) to "reject the [H]atch family's proposal based [on] false, defamatory statements" sent by email—namely, that Plaintiffs' proposal was the "least prepared" of the final three being reviewed by the "independent review committee." ECF No. 100 at 16.

As a result of these alleged actions, Cinnaire's proposal was ultimately selected, and Plaintiffs' business "Night Owl Services, LLC" went out of business on April 1, 2022. ECF No. 80 at 4; ECF No. 100 at 9. But for the racial discrimination, Plaintiffs allege that Night Owl Services, LLC would not have gone out of business. ECF No. 100 at 17. Because of Defendants' conduct, Plaintiffs claim to have suffered "emotional distress," a loss of their family's investments, and a loss of their business's income potential. *Id*. at 18. Defendants' actions have "[taken] a unique growing businesses [sic] growth potential 'off the table,'" which according to Plaintiffs is "comparable to taking our children's futures away." *Id.*

Case 2:20-cv-01791-JPS   Filed 11/23/22   Page 5 of 33   Document 111

Plaintiffs concede that the property they sought to purchase was not ultimately sold to anyone—whether involved in this case or otherwise. *Id.* at 5. Nevertheless, Plaintiffs seek relief under 42 U.S.C. §§ 1982, 1983, and 1981, as well as under 18 U.S.C. §§ 1343, 1341, 1361, and 1961–68. Plaintiffs additionally seek relief for intentional infliction of emotional distress and defamation. ECF No. 80 at 6–12. They no longer seek relief under the Fair Housing Act.

### 3. GENERAL STANDARDS

District courts have a "special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim." *Kiebala v. Boris*, 928 F.3d 680, 684 (7th Cir. 2019) (internal citation omitted). In addition to viewing a pro se complaint with an "understanding eye," a district court "may point a *pro se* litigant toward the correct procedure or 'take appropriate measures to permit the adjudication of *pro se* claims on the merits.'" *Id.* (internal citation omitted). At the same time, however, district courts are not charged with seeking out legal "issues lurking within the confines" of the pro se litigant's pleadings. *Id.* at 684–85 (internal citation omitted).

On a motion to dismiss, the district court accepts as true a plaintiff's factual allegations. *Harris v. Honey*, No. 90-3037, 1991 U.S. App. LEXIS 27193, at *5 (7th Cir. 1991) (internal citation omitted). "[A]ll such facts, as well as the reasonable inferences that follow, are viewed in the light most favorable to the plaintiff." *Teague v. United States Postal Serv.*, No. 94-C-2152, 1997 U.S. Dist. LEXIS 20864, at *6 (N.D. Ill. Dec. 23, 1997) (internal citation omitted).

## 4. DISCUSSION

### 4.1 Plaintiffs' Attempt to Amend in a Piecemeal Fashion

As an initial matter, Plaintiffs, in addition to providing supplemental factual allegations in their second amended complaint, direct the Court to also review their first amended complaint for relevant exhibits and statements. *See* ECF No. 80 at 3. This the Court will not do.

The Civil Local Rules expressly prohibit requests of this kind, and pro se litigants are not excused from complying with these rules simply by virtue of their pro se status. *See Thompson v. Village of Monee,* 2013 U.S. Dist. LEXIS 92428, at *11 (N.D. Ill. July 1, 2013) ("A plaintiff's pro se status . . . does not absolve him from complying with the federal and local procedural rules."). "Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference." Civ. L.R. 15(a).

Plaintiffs have attempted to incorporate the allegations of their first amended complaint by reference in their second amended complaint. The Court does not allow pleading in a piecemeal fashion—all relevant factual allegations need to be pleaded within the same filing. The Court has neither the time nor the inclination to sift through the record to cobble together a sum of factual allegations from multiple separate documents. *See Petty v. Kemp*, No. 15-cv-111-MJR, 2015 U.S. Dist. LEXIS 22652, at *9 (S.D. Ill. Feb. 25, 2015) (instructing defendant to include all relevant factual allegations in the complaint rather than present them in a piecemeal fashion in a separate document).

If Plaintiffs intend the Court to consider certain information, that information needs to be presented in the operative complaint (at present,

Case 2:20-cv-01791-JPS   Filed 11/23/22   Page 7 of 33   Document 111

the second amended complaint) or attached thereto. *Brown v. Uhl*, No. 22-CV-131-JPS, 2022 U.S. Dist. LEXIS 136801, at *3 (E.D. Wis. Aug. 2, 2022) ("[T]he proposed amended complaint must be complete and set forth all claims in one document."); *Jackson-Cobb v. Sprint United Mgmt.*, 173 F. Supp. 3d 1139, 1143 n.3 (D. Colo. 2016) ("While Plaintiff attempts to incorporate by reference . . . all prior factual allegations included in her First Amended Complaint . . . , the filing of the Second Amended Complaint supersedes the First Amended Complaint and renders the First Amended Complaint of no legal effect . . . Consequently, the Court examines only those claims that were included in Plaintiff's Second Amended Complaint."). Accordingly, the Court will consider only those claims contained within the operative complaint—the second amended complaint—as well as any factual allegations made by Plaintiffs in their responses in opposition to Defendants' motions. *See Corley v. Vance*, 365 F. Supp. 3d 407, 432 (S.D.N.Y. 2019) (noting that a district court in deciding a motion to dismiss may consider factual allegations made by a pro se litigant in his papers opposing the motion).[3]

---

[3]Defendants Angelique L. Sharpe ("Sharpe), Havenwoods HEDC/BID #31, and Stephanie Harling ("Harling") (collectively, the "Havenwoods Defendants") urge that the Court rely solely on the facts alleged in the second amended complaint and that it not consider the additional allegations in Plaintiffs' response. ECF No. 109 at 3–4. It is true that it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). However, the Seventh Circuit in *Car Carriers* concluded that the lower court's doing so was "in no way prejudicial to the plaintiffs" as the lower court did so solely "to examine and consider every reasonable presumption in the plaintiffs' favor," as it was obligated to do for a pro se plaintiff. *Id*. The same is true here.

### 4.2 Defendants' Motions

Before the Court are multiple motions to dismiss brought on behalf of various individual and groups of Defendants. *See* ECF Nos. 86, 88, 89, 91, 93. Also before the Court are various notices of joinder. ECF Nos. 87, 92 at 2, 93 at 2. This Order serves to address those motions.

### 4.2.1 Motions for Joinder

Defendants Cinnaire, James Dow ("Dow"), and Christopher Laurent ("Laurent") (collectively, the "Cinnaire Defendants") filed a notice of "Cinnaire Solutions Defendants' Joinder to City of Milwaukee Motion to Dismiss Second Amended Complaint." ECF No. 87. Therein, they write that they "hereby join the Motion to Dismiss Second Amended Complaint by [the City of Milwaukee] Defendants (ECF Dkt. 84) and the City Defendants' supporting brief (ECF Dkt. 85) . . . ." *Id*. Havenwoods Defendants[4] also indicate their intention to join the motion and brief submitted by Defendants City of Milwaukee, Barrett, Ashanti Hamilton ("Hamilton"), Sakuri Fears ("Fears"), Andrea Pratt ("Pratt"), DCD, Edwards, Matt Haessly ("Haessly"), Amy E. Turim ("Turim"), Ken Little ("Little"), Vanessa Koster ("Koster"), and James Starke ("Starke") (collectively, the "City of Milwaukee Defendants"), ECF No. 92 at 2, as do Defendants Hanewall and Villard Avenue Business Improvement District 19 LLC ("BID"), ECF No. 93 at 2, and Defendants NWSCDC, Willie Smith

---

[4] The acronym for Havenwoods Defendant HEDC/BID #31, *see supra* note 3, refers to Havenwoods Economic Development Corporation, a Milwaukee, Wisconsin non-profit. According to their website, HEDC now goes by "Havenwoods Neighborhood Partnership" or "HNP." https://havenwoods.org/let-us-reintroduce-ourselves/ (last visited Nov. 21, 2022). For the sake of clarity and consistency, this Order will use the entity's former name, as pleaded by Plaintiffs.

Case 2:20-cv-01791-JPS   Filed 11/23/22   Page 9 of 33   Document 111

("Smith"), and Howard Snyder ("Snyder"), ECF No. 90 at 1. Plaintiffs do not appear to oppose the various proposed joinders, and the City of Milwaukee Defendants have confirmed that "all other defendants appearing in this action intend to join the City Defendants' motion." ECF No. 84 at 2 n.1. Accordingly, the Court will grant the motions for joinder.

### 4.2.2 Fed. R. Civ. P. 12(b)(6)

In support of their various motion to dismiss, Defendants rely on Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss thereunder, "the complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Cherry v. Husz*, No. 14-CV-1539-JPS, 2015 U.S. Dist. LEXIS 97504, at *6 (E.D. Wis. July 27, 2015) (internal citations omitted). A plausible claim is one with "enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).[5] "[C]ourts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

---

[5]Defendants collectively spill much ink arguing that the Court should dismiss Plaintiffs' claims because Plaintiffs failed to provide sufficient evidence in support of their allegations. But the Court is not concerned with this at the motion to dismiss stage. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to *offer* evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (emphasis added), abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.") (internal citation and quotation marks omitted).

Case 2:20-cv-01791-JPS    Filed 11/23/22    Page 10 of 33    Document 111

In deciding a 12(b)(6) motion, the Court does not ask "did these things happen;" instead, "the proper question to ask is . . . '*could* these things have happened.'" *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (internal citations omitted). "[T]he court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *Hartman v. Gilead Scis., Inc.*, 536 F.3d 1049, 1057 (9th Cir. 2008). That said, courts need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action, unsupported by mere conclusory statements. *Cherry*, 2015 U.S. Dist. LEXIS 97504, at *7 (internal citation omitted).

As noted previously, in Plaintiffs' second amended complaint they seek relief under 42 U.S.C. §§ 1982, 1983, and 1981; under 18 U.S.C. §§ 1343, 1341, 1361, and 1961–68; and for intentional infliction of emotional distress and defamation. ECF No. 80 at 6–12. The Court will address each basis for relief within the context of the 12(b)(6) standard.

#### 4.2.2.1      42 U.S.C. § 1982

Plaintiffs seek relief under 42 U.S.C. § 1982. That provision provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Section 1982 applies to both public and private actors and prohibits "every racially motivated refusal to sell or rent" property, residential or otherwise. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 421–22 (1968).

Section 1982 prohibits not only the racially motivated refusal to sell property, but also the racially motivated denial of the *opportunity* to purchase property. *Jones*, 392 U.S. at 419 (citing *Hurd v. Hodge*, 334 U.S. 24, 34 (1948)). The fact that the property at issue was never ultimately sold to

Case 2:20-cv-01791-JPS   Filed 11/23/22   Page 11 of 33   Document 111

another party is not necessarily material—the mere fact that an individual or group of individuals was denied the equal opportunity to be considered as purchasers of property on the basis of race suffices for purposes of § 1982. Indeed, § 1982 "prohibits interference by a third party with an individual's equal opportunity to purchase property." *Hatch v. City of Milwaukee,* No. 21-2805, 2022 U.S. App. LEXIS 8014, at *6 (7th Cir. 2022) (citing *Shaikh v. City of Chicago*, 341 F.3d 627, 630 (7th Cir. 2003)).

In order to state a claim under § 1982, Plaintiffs must plausibly allege that (1) they are racial minorities, (2) Defendants engaged in intentional, race-based discrimination, and (3) the discrimination concerned the sale of property. *Hatch*, 2022 U.S. App. LEXIS 8014, at *6 (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413, 415 (7th Cir. 1996)). Plaintiffs' second amended complaint does just this.

Plaintiffs state that they are a black family and that they were intentionally discriminated against by Defendants collectively to prevent them from acquiring the property for sale. *See* ECF No. 80 at 3, 6 (describing themselves as "black plaintiffs" and alleging that Defendants conspired to concoct schemes and excuses to prioritize a white prospective purchaser's proposal over that of Plaintiffs' just to keep a "black family" from acquiring the property). Plaintiffs write that Plaintiff Eddie Hatch submitted a proposal to purchase the property with "pre-qualified funding" and claim that their proposal (as well as that of another minority prospective purchaser) was subordinated to that of Cinnaire, despite Cinnaire's lack of "firm financing." *See* ECF No. 100 at 21; ECF No. 80 at 5. These allegations allow for the reasonable inference that the subordination of the minority prospective purchasers' proposals, including that of Plaintiffs, was

motivated by their status as minorities—the differentiating characteristic identified by Plaintiffs between those prospective purchasers and Cinnaire.

The Court must next discuss the issue of causation, as various Defendants cite it as requiring dismissal of Plaintiffs' claims. The Hanewell Defendants, for instance, argue that Plaintiffs have failed to demonstrate that the City's decision not to sell the building to Plaintiffs was "determinatively based on Plaintiffs' race." ECF No. 94 at 4.

Several decades ago, the Seventh Circuit wrote that race, in the context of § 1982, and whether relied on totally or only supplementally, "is an impermissible factor in an apartment rental decision." *Smith v. Sol D. Adler Realty Co.*, 436 F.2d 344, 349–50 (7th Cir. 1970). "[Race] cannot be brushed aside because it was neither the *sole* reason for discrimination nor the total factor of discrimination. We find no acceptable place in the law for partial racial discrimination." *Id*. More recently, the Supreme Court clarified the causation requirement in the context of § 1981 (a "neighboring provision" of § 1982), holding that it requires but-for causation. *See Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1015–16 (2020). This requires the Court to ask: "what would have happened if the plaintiff had been white?" *Id*. "[I]f the defendant would have responded differently but for the plaintiff's race, it follows that the plaintiff has not received the same right as a white person." *Id*. This is what Plaintiffs allege, and so the Court is not persuaded by Defendants' protestations as to causation at this stage. Plaintiffs claim that their purchase proposal was evaluated differently and subordinated to that of Cinnaire's because of Plaintiffs' race. Plaintiffs allege that the asbestos excuse was "documented in 1990" and was essentially raised in 2018 as an asserted justification for Defendants' conduct, but Plaintiffs insist it is not the true motivator behind

Defendants' refusal to seriously consider Plaintiffs' proposal. ECF No. 80 at 5.

Additionally, various Defendants urge the Court to conclude that Plaintiffs' allegations are implausible. For example, one brief insists that there is "simply no basis to conclude . . . how NWSDCD—an organization composed largely of African American employees and directors including Mr. Smith himself—intentionally and racially discriminated against Mr. Hatch during the non-sale of this property." ECF No. 90 at 6. But the mere fact that some Defendants are the same race as Plaintiffs does not necessarily foreclose Plaintiffs' allegations of discrimination. *See Valentin v. Esperanza Hous. Counseling*, No. 18-1984, 2019 U.S. Dist. LEXIS 128180, at *7 n.1 (E.D. Penn. July 31, 2019) (noting, in the context of Title VI, that same-race discrimination is cognizable). It is not the Court's place to rule out that possibility at this stage.

At this stage of the proceedings, the Court is unable to draw any conclusions on whether Plaintiffs' description of these events definitively happened as alleged, but simply finds that they "could" have happened. *Olson,* 784 F.3d at 1099. Based on the facts alleged and the reasonable inferences drawn therefrom, the Court concludes that this indeed "could" have happened, notwithstanding the Court's skepticism as to the extent of the discriminatory conspiracy alleged. *Id.* That is all that Plaintiffs were required to convince the Court of at this juncture.

As noted previously, the Court is obligated, at this stage, to accept Plaintiffs' factual allegations as true and to interpret as favorable to Plaintiffs the reasonable inferences derived therefrom. *Teague,* 1997 U.S. Dist. LEXIS 20864, at *6. That being the case, the Court concludes that Plaintiffs have plausibly stated a claim for relief under 42 U.S.C. § 1982.

However, some of the named Defendants—the City of Milwaukee and the DCD—are "municipalities and other units of local government." *Allen-Noll v. Madison Area Tech. Coll.*, No. 18-cv-216-slc, 2018 U.S. Dist. LEXIS 217234, at *29 (W.D. Wis. Dec. 28, 2018). Accordingly, in order to attribute liability as to them, Plaintiffs need to allege that the violation of § 1982 "resulted from a . . . policy, custom, or practice as required under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)." *Id.*; *see also Elmore v. Memphis & Shelby Cnty. Film Comm'n,* No. 21-cv-2330, 2021 U.S. Dist. LEXIS 258721, at *11 (W.D. Tenn. Dec. 15, 2021) (applying *Monell*'s standards in the context of municipal liability under § 1982 and granting motion to dismiss for failure to state a § 1982 claim against municipal defendant partially on that basis). None of Plaintiffs' factual allegations suggest this.

However, "[c]ourts should not dismiss the complaint unless it is beyond a doubt that there are no facts to support relief." 3 MOORE'S FEDERAL PRACTICE – CIVIL § 15.15. Merely because Plaintiffs have not pleaded such factual allegations does not necessarily mean that "there are no [such] facts" in existence to support their claim. *Id*. Therefore, the Court is obliged to allow Plaintiffs one last opportunity to amend to address this deficiency.

Accordingly, the Court will not grant any of Defendants' motions to dismiss on the basis that Plaintiffs' second amended complaint fails to state a claim under 42 U.S.C. § 1982. The Court will grant Plaintiffs leave to amend their second amended complaint to address the deficiency of their claim(s) as to Defendants City of Milwaukee and DCD.

#### 4.2.2.2     42 U.S.C. § 1981

Section § 1981 "addresses racial discrimination in contractual relationships." *Morris*, 89 F.3d at 413. "As amended by the Civil Rights Act of 1991, the statute reads in relevant part:"

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . .
>
> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

*Id*.

Section § 1981 is construed "in tandem" with § 1982, discussed above. *Id*. "Section 1981 does not contain any express limitation on who may be liable for violating the rights it creates, and courts have interpreted the statute to support liability for any person who interferes with the plaintiff's contractual rights on the basis of race, even if that individual is not a contracting party." *Fazeli v. Northbridge Stroudwater Lodge II LLC*, 20-cv-350-JDL, 2021 U.S. Dist. LEXIS 84599, at *18 (D. Me. May 4, 2021) (internal citation omitted).

To state a claim under § 1981, Plaintiffs must show that "(1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and

enforcing of a contract)." *Morris*, 89 F.3d at 413. The Court has established above, *see* Section 4.2.2.1, that the first two of these requirements are met for purposes of the motion to dismiss stage. It is the third requirement that requires further analysis. Plaintiffs were not in a contractual relationship with any of the Defendants. However, they sought to enter into a contract for the purchase of the property and were actively engaging in efforts to do so, and to raise a claim under § 1981, "a contractual relationship need not already exist, because § 1981 protects the would-be contractor along with those who already have made contracts." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, . . . so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Id*.

In *Morris,* the plaintiffs alleged that "Office Max deprived them of their right to purchase merchandise by interfering with their 'prospective contractual relations'" when an Office Max employee summoned the police to investigate the two black plaintiffs as they browsed the store. *Morris*, 89 F.3d at 414. The plaintiffs there did not assert, however, "that Office Max refused to sell them the items; rather, they contend[ed] that by summoning the police to 'check out' African-American patrons like themselves, the store discouraged and dissuaded them from making the purchase." *Id*. The Seventh Circuit concluded that this was insufficient to raise a claim under § 1981. The court wrote that the plaintiffs there had not demonstrated "anything more than a general interest in" the merchandise they were browsing, and "failed to demonstrate that they would have attempted to purchase the time stamps even if they had not been approached by the police." *Id*. In other words, the plaintiffs had not demonstrated that they

had reached the point of engaging in one of the activities enumerated in § 1981—such as the making of a contract. *Id.* ("Their allegation that Office Max interfered with their 'prospective contractual relations' is speculative and insufficient to state a claim under § 1981."). Critically, the court wrote that "[a] claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities." *Id.* at 414–15.

But the circumstances alleged here can be clearly differentiated from those in *Morris*. In contrast to the *Morris* plaintiffs, Plaintiffs here demonstrated a clear desire, intention, and effectuation of their plans to purchase the property. There is no question that they sought to enter into a contractual relationship with Defendants-sellers of the property and had every intention of doing so. They allege that they would have proceeded in so doing had Defendants not collectively conspired to interfere with the appropriate consideration of Plaintiffs' purchase proposal. Again, Plaintiffs allege that this conduct on the part of Defendants was motivated by a desire to keep the building from being sold to a "black family." ECF No. 80 at 6.

The Seventh Circuit clarified that a claim under § 1981 requires the "actual loss of a contract interest," rather than the mere "possible loss of future contract opportunities." *Morris*, 89 F.3d at 414–15. The circumstances of Plaintiffs' case seem to fall somewhere in the middle of this range. Plaintiffs' loss of an anticipated contact interest was not speculative to the extent that the alleged interest was in *Morris*. Neither was it fully actualized. But it is the Court's opinion at this time that it was sufficiently in the process of actualization to constitute the "making" of a contract.

Accepting Plaintiffs' factual allegations as true and drawing all reasonable inferences therefrom in favor of Plaintiffs, the Court concludes

that Plaintiffs have plausibly stated a claim for relief under 42 U.S.C. § 1981. As noted in the previous section, however, some of the named Defendants—the City of Milwaukee and the DCD—are "municipalities and other units of local government." *Allen-Noll,* 2018 U.S. Dist. LEXIS 217234, at *29. In order to attribute liability as to them, Plaintiffs need to allege that the violation of § 1981 "resulted from a . . . policy, custom, or practice as required under" *Monell,* 436 U.S. at 694. *Id.; see also Studifin v. New York City Police Dep't-License Div.-Firearms Control Section,* No. 86-civ-5557-wcc, 1991 U.S. Dist. LEXIS 4579, at *12 (S.D.N.Y. Apr. 8, 1991) ("[T]he limitations on municipal liability established by *Monell* under 42 U.S.C. § 1983 are equally applicable to claims asserted against municipal actors under 42 U.S.C. § 1981") (internal citation omitted). Plaintiffs have not done so.

However, "[c]ourts should not dismiss the complaint unless it is beyond a doubt that there are no facts to support relief." 3 MOORE'S FEDERAL PRACTICE – CIVIL § 15.15. Merely because Plaintiffs have not pleaded such factual allegations does not necessarily mean that "there are no [such] facts" in existence to support their claim. *Id.* Therefore, the Court is obliged to allow Plaintiffs one last opportunity to amend to address this deficiency.

Accordingly, the Court will not grant any of Defendants' motions to dismiss on the basis that Plaintiffs' second amended complaint fails to state a claim under 42 U.S.C. § 1981. The Court will grant Plaintiffs leave to amend their second amended complaint to address the deficiency of their claim(s) as to Defendants City of Milwaukee and DCD.

### 4.2.2.3        42 U.S.C. § 1983

Plaintiffs additionally seek relief under 42 U.S.C. § 1983. Section 1983 allows "a plaintiff to sue any 'person' who violates his civil rights under color of state law." *Derrick v. Schnabl*, No. 16-cv-1355-pp, 2017 U.S. Dist.

LEXIS 121486, at *4 (E.D. Wis. Aug. 2, 2017). "To state a claim under this section, the plaintiff must establish the deprivation of a right secured by the Constitution or laws of the United States." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F3d 816, 822 (7th Cir. 2009).

### 4.2.2.3.1      Civil Conspiracy

Plaintiffs write, next to their recitation of § 1983, "[c]ivil action for deprivation of rights—Civil Conspiracy." ECF No. 80. "Civil conspiracy claims are cognizable under section 1983." *Rockman v. Snyder*, No. 04-522-WDS, 2006 U.S. Dist. LEXIS 62627, at *4–5 (S.D. Ill. Aug. 31, 2006). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). At the pleading stage, no overt act in furtherance of the conspiracy need be alleged. *Id*. at 1008. And while "Rule 9(b) has a short list of matters (such as fraud) that must be pleaded with particularly; conspiracy is not among them." *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003).

Plaintiffs' second amended complaint alleges that Defendants, collectively, conspired to concoct schemes, such as the alleged asbestos excuse, to prevent a "black family" such as Plaintiffs from acquiring the property. ECF No. 80 at 3, 6. Their pleading indicates (1) the parties involved—allegedly, all Defendants named, referred to collectively as the "team"; (2) the general purpose—to "hold on to the subject property . . . rather than sell it to the black family . . . ," *id*. at 6; and (3) the approximate date—"[f]rom the day the Hatch Family's proposal was submitted in Oct. 2018" onward, *id*. at 3. Plaintiffs plead generally that Defendants collectively conspired to engage in conduct violative of Plaintiffs' federal rights (such as their rights under 42 U.S.C. §§ 1981 and 1982, discussed

Case 2:20-cv-01791-JPS   Filed 11/23/22   Page 20 of 33   Document 111

above). Their claim is, in other words, cognizable in that respect. The story does not end there, however.

As noted, liability only attaches to that conduct under § 1983 which is done "under color of . . . law." *Derrick,* No. 2017 U.S. Dist. LEXIS 121486, at *4. "'Under color of law' means that a state or local official acting as such (as opposed to a private person) caused the violation." *Doe v. Round Valley Unified Sch. Dist.*, 873 F. Supp. 2d 1124, 1131 (D. Ariz. 2012) (internal citation omitted). This does not mean, however, that § 1983 liability may only attach to a government official. "When a private actor is implicated, the section 1983 plaintiff may nevertheless prevail if he shows sufficient state involvement in the action in question to trigger constitutional protections." *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991). This requires an allegation of "some agreement between private and public actors" to violate the plaintiff's constitutional rights and a showing that "both public and private actors share a common unconstitutional goal." *Burrell v. City of Mattoon*, 378 F.3d 642, 650 (7th Cir. 2004) (internal citation omitted); *see also Rodriguez,* 577 F.3d at 823 ("[T]he Court has long recognized that, on some occasions, the acts of a private party are fairly attributable to the state because the party has acted in concert with state actors.").

"Both the Supreme Court and the lower federal courts have acknowledged the difficulty of determining whether a private entity has acted under the color of . . . law." *Rodriguez,* 577 F.3d at 823. The Court is satisfied for the time being, however, that Plaintiffs have met their burden as to this requirement for purposes of the motion to dismiss stage. Plaintiffs allege that Defendants—a mix of private and public actors—conspired to concoct schemes and excuses to subordinate Plaintiffs' purchase proposal

to that of Cinnaire's. Defendants allegedly did so with the intent of preventing a "black family" from acquiring the city-owned property. ECF No. 80 at 3, 6. In other words, they allegedly did so in furtherance of discriminating against Plaintiffs based on their race, in violation of federal law. It would therefore appear that Plaintiffs have sufficiently alleged that Defendants—both private and public actors—engaged in conduct under the color of law as required by § 1983.

As to the municipality Defendants, however, further discussion is needed. Section 1983 liability can only attach to "persons." *Allen-Noll*, 2018 U.S. Dist. LEXIS 217234, at *29. "Local public entities and public employees are, indeed, "persons" within the meaning of Section 1983 . . . ." 5 CALIFORNIA TORTS § 61.66 (Federal Civil Rights Act). However, "[a] public entity is liable under Section 1983 [only] when execution of its policy or custom, whether by its law makers or those who represent official policy, violates a person's federally protected rights." *Id*. As noted previously, the City of Milwaukee and the DCD are "municipalities and other units of local government." *Allen-Noll,* 2018 U.S. Dist. LEXIS 217234, at *29. In order to attribute liability as to them, Plaintiffs need to allege that the violation of § 1983 "resulted from a . . . policy, custom, or practice as required under" *Monell,* 436 U.S. at 694. *Id.* Plaintiffs have not done so.

However, "[c]ourts should not dismiss the complaint unless it is beyond a doubt that there are no facts to support relief." 3 MOORE'S FEDERAL PRACTICE – CIVIL § 15.15. Merely because Plaintiffs have not pleaded such factual allegations does not necessarily mean that "there are no [such] facts" in existence to support their claim. *Id*. Therefore, the Court is obliged to allow Plaintiffs one last opportunity to amend to address this deficiency of their claim as to Defendants City of Milwaukee and DCD.

### 4.2.2.3.2      Defamation

Plaintiffs also seek § 1983 liability against Defendants for defamation. ECF No. 80 at 12. However, Plaintiffs acknowledge in their second amended complaint that "[d]efamation is almost impossible to challenge with a § 1983 action" since "§ 1983 actions are for violations of civil rights granted in the Constitution . . .[and] defamation is a matter of state law . . . ." *Id*. Plaintiffs write that defamation is "not a sufficient basis for bringing a § 1983 suit." *Id*. Plaintiffs provide no argument to the contrary. Accordingly, the Court will grant Defendants' motions to dismiss to the extent that those motions seek to do so based on Plaintiffs' failure to state a claim for defamation under § 1983.

However, the Court is required to interpret Plaintiffs' pro se pleadings liberally, and so the Court will analyze whether Plaintiffs have stated a claim for defamation under state law, and if so, whether the Court could exercise supplemental jurisdiction over that state law claim.

The Court assumes, for purposes of this Order, that Wisconsin law is applicable to any potential claim for defamation.[6] To state a defamation claim under Wisconsin law, a plaintiff must allege: "(1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed; and, (3) the communication is unprivileged and tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." *Colborn v. Netflix Inc.*, 541 F. Supp. 3d 888, 899 (E.D. Wis. 2021).

---

[6] "Although there may be valid reasons to question that assumption, it is not the court's place to conduct a choice of law analysis when no party asks for one." *Embiata v. Marten Transp. Ltd.*, 574 F. Supp. 2d 912, 916 (W.D. Wis. Dec. 6, 2007) (internal citation omitted). Accordingly, the Court applies the law of the forum state. *Id.*

The only allegations remotely close to resembling a defamation claim are that Defendants provided "tainted" information about Plaintiffs' purchase proposal and the circumstances of the sale of the property generally to the "independent review committee" to "sway" the outcome, ECF No. 80 at 4, 6, and that Hanewall instructed Defendant(s) to "reject the [H]atch family's proposal based [on] false, defamatory statements" sent by email—specifically, that Plaintiffs' proposal was the "least prepared" of those being reviewed by the "independent review committee." ECF No. 100 at 16. At least as to Hanewall, Plaintiffs appear to have sufficiently pleaded a claim for defamation under Wisconsin law.

But Plaintiffs' second amended complaint does not sufficiently allege that any of the other Defendants made a "false statement" to another which tended to harm the Plaintiffs' reputation as required by Wisconsin law. *See Colborn*, 541 F. Supp. 3d at 899. Plaintiffs' general allegation that Defendants (all? some? it is unclear) provided "tainted" information to the "independent review committee" to improperly prejudice them against Plaintiffs' purchase proposal, ECF No. 80 at 4, 6, is not pleaded with sufficient particularly to survive pleading requirements. As it exists now, it is a speculative and amorphous allegation that does not give Defendants fair notice of Plaintiffs' claim. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (internal citation omitted). It is not clear that "tainted" is equivalent to "false" and it is not clear which of the named Defendants provided this information to the independent review committee. *See* ECF No. 80 at 4, 6. Accordingly, to the extent that Plaintiffs seek to plead state law defamation claims against Defendants other than Hanewood, they have not done so.

However, "[c]ourts should not dismiss the complaint unless it is beyond a doubt that there are no facts to support relief." 3 MOORE'S FEDERAL PRACTICE – CIVIL § 15.15. Merely because Plaintiffs have not pleaded such factual allegations does not necessarily mean that "there are no [such] facts" in existence to support their claim. *Id*. Therefore, the Court is obliged to allow Plaintiffs one last opportunity to amend to address this deficiency as to their state law defamation claim against the Defendants other than Hanewall.

However, the question remains whether the Court has jurisdiction over a state law defamation claim. 28 U.S.C. § 1367 provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." This requires that the federal and state law claims "derive from a common nucleus of operative facts." 5A M.J. COURTS § 53.1.

Plaintiffs' state law defamation claim relates to communications made about their purchase proposal for the property—communications which allegedly prejudiced Plaintiffs from being appropriately considered as purchasers. The circumstances of their attempted purchase of the property are those upon which the Plaintiffs' federal claims are based. The Court is satisfied at this time that Plaintiffs' state law defamation claim is sufficiently related to the claims over which the Court has original jurisdiction, such that the Court can exercise supplemental jurisdiction over it. Accordingly, to the extent that Hanewall's motion seeks dismissal of Plaintiffs' claim of defamation under state law against him, the Court will deny it.

#### 4.2.2.4      18 U.S.C. § 1343

Plaintiffs additionally seek relief under 18 U.S.C. § 1343. This criminal provision pertains to fraud by wire, radio, or television. As a threshold matter, "a plaintiff generally cannot bring claims for a violation of a criminal statute in a private civil cause of action." *Lockhart v. HSBC Fin. Corp.*, No. 13-C-9323, 2014 U.S. Dist. LEXIS 105086, at *26 (N.D. Ill. Aug. 1, 2014). "Indeed, the Supreme Court has explained that it 'has rarely implied a private right of action under a criminal statute, and where it has done so[,] "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone."'" *Id.* (internal citations omitted). However, courts have recognized civil claims brought under 18 U.S.C. § 1343. *See generally, e.g., Bartlett v. Bartlett*, No. 17-cv-37-JPG-SCW, 2017 U.S. Dist. LEXIS 189712 (S.D. Ill. Nov. 15, 2017).

> The statute provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

Put more concisely, the provision "makes it unlawful for a person to transmit by means of wire any writings, signs, signals, pictures, or sounds for the purpose of executing a scheme or artifice to defraud." *Bartlett,* 2017 U.S. Dist. LEXIS 189712, at *11. "An individual violates the statute if three elements are met: (1) participation in a scheme to defraud; (2) intent to

defraud; and (3) the defendant causes a wire transmission in furtherance of the fraudulent scheme." *Id*. (internal citation omitted). Moreover, fraud is a special matter that must be plead with particularity. Fed. R. Civ. P. 9 ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud . . . .").

Plaintiffs allege that Defendants collectively conspired to concoct and implement schemes to keep them from acquiring the property, but they do not clearly allege that Defendants did so to defraud or that Defendants intended to defraud. The words "scheme or artifice to defraud" are construed broadly, but nevertheless, fraud implies a necessary element of deception. *Calobrace v. Am. Nat'l Can Co.*, No, 93-C-0999, 1995 U.S. Dist. LEXIS 915, at *21 (N.D. Ill. Jan. 25, 1995). To "defraud" is to make a "false statement or material misrepresentation, or the concealment of a material fact." *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003).

Plaintiffs have not pleaded with sufficient particularity allegations that Defendants, collectively or otherwise, engaged in wire fraud. However, as noted already, "[c]ourts should not dismiss the complaint unless it is beyond a doubt that there are no facts to support relief." 3 MOORE'S FEDERAL PRACTICE – CIVIL § 15.15. Merely because Plaintiffs have not pleaded such factual allegations as to wire fraud under § 1343 does not necessarily mean that "there are no [such] facts" in existence to support their claim. *Id*. Therefore, the Court is obliged to allow Plaintiffs one last opportunity to amend to address this deficiency.

### 4.2.2.5    18 U.S.C. § 1341

Plaintiffs additionally seek relief under 18 U.S.C. § 1341, which relates to mail fraud. Again, "a plaintiff generally cannot bring claims for a violation of a criminal statute in a private civil cause of action." *Lockhart*,

2014 U.S. Dist. LEXIS 105086, at *26. However, courts have recognized civil claims brought under 18 U.S.C. § 1341. *See generally, e.g., Bartlett,* 2017 U.S. Dist. LEXIS 189712.

The requirements of this provision are nearly identical to those of § 1343, discussed above. "The elements of mail fraud under 18 U.S.C. § 1341 are: '(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme.'" *Williams*, 351 F.3d at 298–99 (internal citation omitted).

For the same reasons discussed in Section 4.2.2.4 as to wire fraud, the Court concludes that Plaintiffs have failed to state a claim for mail fraud. This conclusion is bolstered by the fact that Plaintiffs' second amended complaint makes no mention of use of the mails. As noted regarding Plaintiffs' attempt to state a claim for wire fraud, the Court is nevertheless obliged to allow Plaintiffs one last opportunity to amend to address the pleading deficiencies as to mail fraud.

### 4.2.2.6        18 U.S.C. § 1361

Plaintiffs seek further relief under 18 U.S.C. § 1361. That provision provides that "[w]hoever willfully injures or commits any depredation against any property of the United States, or of any department which has been or is being manufactured or constructed for the United States, or any department or agency thereof, or attempts to commit any of the foregoing offenses," shall be subject to punishment.

There is no indication that 18 U.S.C. § 1361 is applicable to this case. Plaintiffs' allegations do not involve "any property of the United States, or of any department or agency thereof, or any property" manufactured or constructed for the United States. This deficiency and the simple

inapplicability of this statute to this action cannot be fixed by further amendment of the second amended complaint, and so granting Plaintiffs leave to amend to address this issue would be futile. *See Bethany Pharmacal Co. v. QVC, Inc.,* 241 F.3d 854, 860–61 (7th Cir. 2001) ("Although leave to amend a complaint should be freely granted when justice so requires, . . . the district court need not allow an amendment . . . when the amendment would be futile."). Accordingly, to the extent that the Defendants' motions to dismiss seek dismissal for failure to state a claim under 18 U.S.C. § 1361, the Court grants the motions.

### 4.2.2.7        18 U.S.C. §§ 1961-1968

Plaintiffs additionally seek relief under 18 U.S.C. §§ 1961-1968, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Those provisions make it unlawful "to conduct" an "enterprise's affairs through a pattern of racketeering activity," where "racketeering" is defined as behavior that violates certain enumerated federal statutes or state laws. *Limestone Dev. Corp. v. Village of Lemont*, 437 F. Supp. 2d 858, 868 (N.D. Ill. 2007). "In order to qualify as a 'pattern' under RICO, a plaintiff must show 'at least two acts of racketeering activity . . . the last of which occurred within 10 years . . . after the commission of a prior act of racketeering activity.'" *Id*. "The RICO statute allows for civil actions in which 'any person injured in his business or property' by a RICO violation may seek treble damages and attorney's fees." *Id.* It also provides that conspiracy to violate any of the provisions thereunder is actionable under the statute. *Id*.

Racketeering activity under RICO includes commission of wire or mail fraud under 18 U.S.C. §§ 1341, 1343. 18 U.S.C. § 1961(1). Wire and mail fraud appear to be the underlying racketeering activities alleged by Plaintiffs. As discussed above, however, Plaintiffs have not at this time

succeeded in stating claims for wire or mail fraud. *See supra* Sections 4.2.2.4 and 4.2.2.5. They have not, therefore, succeeded in demonstrating a "pattern" of those activities as required to state a RICO claim. Nor have Plaintiffs demonstrated that Defendants engaged in a conspiracy to commit wire or mail fraud. The Court is nevertheless obliged to allow Plaintiffs one last opportunity to amend to address the pleading deficiencies as to their RICO claim and its underlying claims for mail and wire fraud.

### 4.2.2.8      Intentional Infliction of Emotional Distress

Plaintiffs additionally seek to recover for intentional infliction of emotional distress ("IIED"). The Court assumes, for purposes of this Order, that Wisconsin law is applicable to any potential claim for IIED. *See supra* note 6. To raise a claim for IIED under Wisconsin law, a plaintiff must allege "(1) that the defendant's conduct was intentioned to cause emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) that the plaintiff suffered an extreme disabling emotional response to the defendant's conduct." *Lenczner v. Fargo*, No. 14-cv-691-wmc, 2017 U.S. Dist. LEXIS 82713, at *7 (W.D. Wis. May 31, 2017).

Plaintiffs do not allege that Defendants' conduct was "intentioned to cause emotional distress." *Id*. This element requires the plaintiff to show that "the purpose of the conduct was to cause emotional distress." *Woltring v. Specialized Loan Servicing LLC*, 56 F. Supp. 3d 947, 952 (E.D. Wis. 2014) (internal citation omitted). Plaintiffs allege that Defendants acted as they did to "hold on to the subject property . . . rather than sell it to the black family . . . ," ECF No. 80 at 6, and that Defendants were motivated by racial animus, but their pleadings do not suggest that Defendants so acted to cause Plaintiffs' emotional suffering.

Moreover, while Plaintiffs allege generally that they have suffered "emotional distress," ECF No. 100 at 18, they have not alleged that they suffered an "extreme disabling emotional response" to Defendants' conduct. *Lenczner*, 2017 U.S. Dist. LEXIS 82713, at *7. Their assertion of having suffered "emotional distress" is a threadbare, conclusory claim. This element of IIED has been interpreted as requiring the plaintiff to "demonstrate that he was unable to function in his other relationships because of the emotional distress caused by defendant's conduct." *Sheikh v. Grant Reg'l Health Ctr.*, No. 11-cv-1-wmc, 2012 U.S. Dist. LEXIS 85374, at *13 (W.D. Wis. June 20, 2012). This Plaintiffs do not allege.

Plaintiffs' second amended complaint fails to state a claim for IIED under Wisconsin law. The Court is nevertheless obliged to allow Plaintiffs one last opportunity to amend to address the pleading deficiencies as to that claim.

### 4.3.3 Request for Costs and Fees

In addition to seeking dismissal of Plaintiffs' claims against them, Defendants City of Milwaukee, Barrett, Hamilton, Fears, Pratt, DCD, Edwards, Haessly, Turim, Little, Koster, and Starke (and various other Defendants, having joined in the motion, *see* Section 4.2.1) seek an award of "costs, fees, and disbursements of this action." ECF No. 86 at 2. Because Defendants have provided no analysis or authority for this request, the Court will deny it.

## 5. CONCLUSION

Pursuant to the above discussion, the Court will grant Plaintiffs leave to properly file a third amended complaint to address the deficiencies described in this Order by no later than **December 28, 2022**. Plaintiffs should not take this opportunity to attempt to re-plead claims that the

Court has dismissed in this Order (for example, Plaintiffs' claim under 18 U.S.C. § 1361 and Plaintiffs' claim for defamation under 42 U.S.C. § 1983). Plaintiffs are advised that the third amended complaint must bear their mailing address, signatures, the docket number assigned to this case, and must be simply labeled "Third Amended Complaint." The third amended complaint supersedes the prior amended complaints and must be complete in itself without reference to the original complaint or the subsequent amended complaints. In other words, it must contain all relevant factual allegations within the **same document**—it is not enough for the factual allegations to appear in a separate filing. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998); Civ. L.R. 12 ("Any amendment to a pleading . . . must reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference."). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If the third amended complaint is received, it will become the operative complaint in this action.

Accordingly,

**IT IS ORDERED** that Defendants' motions for joinder, ECF Nos. 87, 92 at 2, 93 at 2, be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' motions to dismiss, ECF Nos. 86, 88, 89, 91, and 93, be and the same are hereby **GRANTED in part and DENIED in part** in accordance with this Order**;**

**IT IS FURTHER ORDERED** that Defendants' request for costs and fees, ECF No. 86, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiffs' claims under 18 U.S.C. § 1361 and for defamation under 42 U.S.C. § 1983 be and the same are hereby **DISMISSED with prejudice;**

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiffs a copy of the guide entitled "Answers to Pro Se Litigants' Common Questions," along with this Order; and

**IT IS FURTHER ORDERED** that, should they wish to proceed with their suit against Defendants City of Milwaukee and Department of City Development, Plaintiffs shall file a third amended complaint pursuant to this Order by **December 28, 2022**. Failure to do so may result in dismissal of the claims against those defendants for failure to state a claim.

Dated at Milwaukee, Wisconsin, this 23rd day of November, 2022.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge